UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

April 25, 2019

LETTER TO COUNSEL

      RE:    *Joseph L. v. Commissioner, Social Security Administration*;
             Civil No. SAG-18-1384

Dear Counsel:

On May 11, 2018, Plaintiff Joseph L. petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny his claims for disability benefits. ECF 1. I have considered the parties' cross-motions for summary judgment. ECF 15, 18. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Plaintiff's motion, grant the SSA's motion, and affirm the SSA's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Plaintiff protectively filed claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on December 6, 2012, alleging a disability onset date of June 1, 2006. Tr. 350-53. Plaintiff's Date Last Insured ("DLI") is December 31, 2011, so he had to establish disability on or before that date to qualify for DIB, although he would remain eligible for SSI if he became disabled on a later date. Tr. 13. His claim was denied initially and on reconsideration. Tr. 228-39. Hearings were held on April 21, 2016 and January 19, 2017, before an Administrative Law Judge ("ALJ"). Tr. 41-142. Following those hearings, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 12-28. The Appeals Council ("AC") denied Plaintiff's request for review, Tr. 1-5, so the ALJ's decision constitutes the final, reviewable decision of the SSA.

The ALJ found that, during the relevant period, Plaintiff suffered from the severe impairments of "bicuspid aortic valve; aortic stenosis and insufficiency; hypertension; sleep apnea; obesity; left inguinal hernia; T8 fracture; and major depressive disorder." Tr. 15. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he is further limited to: never kneeling, crouching, crawling, or climbing ladders, ropes or scaffolds; occasional balancing, stooping, and climbing ramps or stairs; never working at unprotected heights or around moving mechanical parts;

> occasional exposure to dust, odors, fumes, pulmonary irritants, extreme cold, and extreme heat; frequent contact with supervisors; and occasional contact with co-workers, and the public.

Tr. 18. After considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy and that, therefore, he was not disabled. Tr. 27-28.

In support of his appeal, Plaintiff advances several general arguments with a great number of subparts: (1) that the ALJ erred at step two by declining to find multiple impairments to be severe, ECF 15-1 at 9-10; (2) that the ALJ erred in evaluating the listings, ECF 15-1 at 10-15; (3) that the ALJ erred in discounting Plaintiff's subjective assertions of disabling symptoms, ECF 15-1 at 18-24; (4) that the ALJ erred in evaluating the medical opinions and other evidence, ECF 15-1 at 24-26; and (5) that the ALJ erred in evaluating the VE evidence, ECF 15-1 at 26-33. Each argument lacks merit for the reasons discussed below.

First, Plaintiff asserts that the ALJ should have found additional impairments to be "severe." ECF 15-1 at 9-10. An impairment is considered "severe" if it significantly limits the claimant's ability to do basic work activities. *See* 20 C.F.R. §§ 404.1522; 416.922. The claimant bears the burden of proving that an impairment is severe. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). Here, the ALJ adequately considered the relevant impairments at step two. Tr. 15-16. The ALJ specifically considered GERD, asthma/COPD, and alcohol abuse, and cited to medical evidence to explain why each of those conditions was not severe. *Id.* As to Plaintiff's hip pain, the ALJ described why he found no medically determinable impairment. Tr. 16. Finally, the ALJ discussed a variety of Plaintiff's cardiovascular symptoms and impairments, including hypertension[1], calcified bicuspid aortic valve, congestive heart failure, and syncope, and explained his findings that those particular conditions were non-severe. Tr. 15-16. Plaintiff, who bears the burden of proving the severity of each impairment, cites no specific evidence to suggest or establish that any of those impairments are in fact severe, or impose any work-related limitations. In fact, some of the impairments Plaintiff references, such as sleep apnea and obesity, were actually deemed severe by the ALJ.[2] ECF 15-1 at 9-10. Plaintiff is

---

[1] The ALJ's opinion lists "hypertension" as both a severe and a non-severe impairment, and lists "bicuspid aortic valve" as a severe impairment, but does not draw a clear conclusion about Plaintiff's "calcified bicuspid aortic valve." Tr. 15. Regardless, the ALJ's evaluation of Plaintiff's cardiovascular symptoms and impairments is adequate.

[2] Plaintiff contends that his obesity "has been determined by more than one medical source to be morbid obesity (with a BMI of more than 40 consistently)." ECF 15-1 at 10. To support that contention, Plaintiff cites more than 200 pages of medical records, most of which have nothing to do with his weight, and many of which pre-date his significant weight gain years after his motor vehicle accident. *See* Tr. 1133-1203, 1218-1306, 1336-1438. This Court's review of the transcript does not substantiate Plaintiff's position, and this Court declines to engage in the fishing expedition Counsel apparently proposes for the Court to try to locate specific evidence to support his claim within a vast number of unrelated medical

correct that the record contains one notation, by a consultative examiner, that Plaintiff had tendonitis in his knees. Tr. 970. That same examiner found full range of motion and motor strength in both knees, with no sensory deficits, and noted, "Both knees are without clubbing, cyanosis or edema, or swelling or tenderness to palpation or crepitus." Tr. 969-70. A review of the other unspecific records Plaintiff offers as a "citation" reveals no other indication of knee restrictions, symptoms, or treatment. *See* ECF 15-1 at 9 (citing Tr. 547-77). Accordingly, if the ALJ's failure to determine the severity of knee tendonitis constitutes error at all, it would be harmless. Because Plaintiff made the threshold showing that his other impairments were severe, the ALJ continued with the sequential evaluation process and properly considered all impairments, both severe and non-severe, that significantly impacted Plaintiff's ability to work. *See* 20 C.F.R. §§ 404.1523, 416.923. Any step two error, therefore, does not necessitate remand.

Next, Plaintiff asserts that the ALJ should have found him to meet the criteria of multiple listings, including 1.02, 1.04, 4.00, 12.04, and 12.06. ECF 15-1 at 10-15. First, with respect to Listing 1.02 for joint impairments, the ALJ did not identify that listing as one requiring discussion. Under existing Fourth Circuit law, an ALJ only has to identify a listing and compare the evidence to the listing requirements where there is ample evidence to suggest that the listing could be met. *See Huntington v. Apfel*, 101 F. Supp. 2d 384, 390 (D. Md. 2000) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)); *Ketcher v. Apfel*, 68 F. Supp. 2d 629, 645 (D. Md. 1999) (noting that the "duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments"). The ALJ had already described, at step two, why Plaintiff's hip pain did not amount to a medically determinable impairment, and, as noted above, the record contains almost no evidence of knee-related symptoms. Accordingly, the record did not contain ample evidence to suggest that Listing 1.02 might be met.

Similarly, while the ALJ referred to a potentially applicable category of listings at 4.00 (pertaining to cardiovascular disorders), the ALJ did not identify or evaluate any specific listings within that general category. Tr. 17. A mere reference to a general category of listings does not indicate that the ALJ found ample evidence to identify and analyze any or all of those listings. Plaintiff, who bears the burden at step three, does not articulate any specific cardiovascular listing that may have been met, and does not review the criteria of any such listing along with supporting medical evidence. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (stating claimants bear the burden in steps one through four of evaluating disability claims, where step three involves deciding if the impairment meets or medically equals the listings) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam)). I therefore find no error in the ALJ's decision not to evaluate any specific cardiovascular listing.

Turning to the listings that the ALJ did discuss, as to Listing 1.04, the ALJ cited Exhibit 48F for the proposition that no compromise of the nerve root or the spinal cord was found on

---

records. The ALJ referenced Plaintiff's obesity, found it to be a severe impairment, and fully considered it in both the listing analysis and the RFC assessment. Tr. 15, 17, 20, 22, 23, 25, 26.

imaging. Tr. 16. The summary of the MRI contained in that exhibit does not reference compromise of the nerve root or spinal cord, Tr. 1304, and Plaintiff has not identified any particular evidence to the contrary. Moreover, the ALJ's RFC analysis contains discussion of specific evidence relating to other criteria in Listing 1.04, also sufficient to support the ALJ's ultimate conclusion that Listing 1.04 was not met. *See* Tr. 20 (noting full lower extremity strength, negative straight leg raising tests); Tr. 21 (noting full strength in extremities, no sensory defects, and normal ambulation). Plaintiff provides no citation to specific medical evidence suggesting that he meets each criteria of any subsection of Listing 1.04.[3] Thus, the ALJ's own analysis establishes that Plaintiff did not satisfy the listing criteria. This is not an instance where "[i]nconsistent evidence abounds, . . . 'leav[ing the court] to wonder' in such a way that [the court] cannot conduct 'meaningful review.'" *See Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015) (unpublished) (quoting *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015)); *see also Brown v. Colvin*, 639 F. App'x 921, 923 (4th Cir. 2016) (unpublished) (per curiam) (remanding the case when the decision of the ALJ was deficient despite the Commissioner's contention that the listing clearly was not met, finding that the claimant's "medical record [was] not so one-sided" that the court could say the listing was not implicated). The record in this case, as accurately summarized by the ALJ, simply does not substantiate the presence of the listing criteria.

In his final listing argument, Plaintiff contends that the ALJ should have determined that Plaintiff met mental health listings 12.04 (depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders). The ALJ only identified and evaluated Listing 12.04, but the same "paragraph B" and "paragraph C" criteria apply to both listings. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04, 12.06 (2017). The ALJ appropriately applied the special technique pertaining to mental impairments, evaluating each of the relevant functional areas with citations to the record evidence. Plaintiff asserts that the ALJ's analysis "[relied] too heavily on the one-time psychiatric consultative examination (CE) performed many years prior, and not based on the most up-to-date evidence or statements of the claimant." ECF 15-1 at 14. To support that contention, Plaintiff cited only to another consultative examination that occurred on the same date as the one cited by the ALJ, which assessed his physical, not his mental, condition. *Id.* (citing Tr. 967-73). Plaintiff does not cite, and the record does not reflect, any more recent or relevant mental health evidence contradicting the consultative examination cited by the ALJ.

---

[3] Plaintiff focuses in his brief on ambulation, without enumerating the other relevant criteria. *See* ECF 15-1 at 11 (noting that he used a back brace and walking stick at the hearing and "has also used a cane"). The requirement for an "inability to ambulate effectively" generally requires evidence of "the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . . [E]xamples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B)(2)(b). Thus, the evidence cited by Plaintiff would not establish an inability to ambulate effectively for listing purposes. Plaintiff also makes an unsupported assertion that the medical expert, Dr. Bryan, "more or less conceded" that Plaintiff's symptoms met a musculoskeletal listing in the years immediately following his motor vehicle accident. ECF 15-1 at 12. Plaintiff provides no citation for that alleged testimony, and I am unable to locate any such "concession" in the record. In fact, Dr. Bryan testified that Plaintiff "did not have the criteria for the listings so I could not state that he would meet that listing." Tr. 65-66.

Moreover, the ALJ did summarize and discuss the Plaintiff's mental health history in the RFC analysis, lending further support to the ALJ's conclusion that Listings 12.04 and 12.06 were not met. Tr. 19, 22-23.

Next, Plaintiff asserts that the ALJ relied only on a lack of objective medical evidence to discredit his subjective complaints of disabling symptoms. ECF 15-1 at 18-22. However, in contrast, the ALJ relied upon Plaintiff's own reports of his activities to contradict his alleged symptoms. Tr. 17 (noting that Plaintiff can drive and cook, go fishing occasionally, and care for his child); Tr. 20-21 (noting that at the time Plaintiff "was performing household chores such as vacuuming and washing dishes"); Tr. 22 (noting that Plaintiff was seeking construction work in 2010, but had been unable to find a job due to the job market). Thus, the ALJ appropriately considered Plaintiff's subjective statements, in addition to the objective results from his medical examinations, to determine his functional capabilities. Ultimately, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971). Even if there is other evidence that may support Plaintiff's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In considering the entire record, and given the evidence outlined above, I find the ALJ's evaluation of Plaintiff's subjective complaints was supported by substantial evidence.

Next, Plaintiff posits that the ALJ's RFC determination did not include an appropriate function-by-function analysis. ECF 15-1 at 22-24. However, the ALJ's analysis of the medical evidence is detailed, clear, and well-supported by citations to the record. In fact, the ALJ includes a specific discussion of Plaintiff's relevant physical, mental, and environmental limitations, Tr. 26, and imposes limitations that were stricter than those found by some treating and examining physicians. *Id.* (imposing a limitation to sedentary, not light, work, adding environmental limitations due to shortness of breath, and imposing social functioning limitations to address untreated mental health issues).

Plaintiff also contends that the ALJ assigned insufficient weight to opinions and GAF scores from his various treating physicians. ECF 15-1 at 24-26. Instead, Plaintiff contends, the ALJ gave more weight to the opinions of the non-treating medical expert, Dr. Bryan, and the non-examining State agency consultants. *Id.* First, the ALJ devoted three full pages of the opinion to a detailed evaluation of the opinion evidence. Tr. 23-26. The weight assigned to the opinions of the treating doctors ranged from "great weight" to some of Dr. Ayala's opinions, to "no weight" to the opinion of a treating nurse practitioner whose opinions contradicted Plaintiff's own testimony and to the opinion of Dr. Atluri, whose opinion contradicted that of Dr. Ayala, the treating cardiologist. *Id.* Thus, to the extent that a reduced amount of weight was assigned to the opinion of a treating physician, the ALJ provided substantial evidence to justify the assignment.

The ALJ also assigned only "partial weight" to the opinion of a physical consultative examiner, finding that the determination that Plaintiff could sustain light exertion did not adequately account for his obesity. Tr. 25. Instead, the ALJ agreed with the opinion of the

medical examiner, Dr. Bryan, limiting Plaintiff to sedentary work, which is the same exertional limitation imposed by Dr. Ayala. Tr. 24. In light of the well-justified assignments of weight, I find no error in the ALJ's evaluation of the opinion evidence.

As for the GAF score, the record contains a GAF score at the time of discharge from Plaintiff's only psychiatric hospitalization in 2010. Tr. 657. It is well established that "a GAF score is not determinative of whether a person is disabled." *Melgarejo v. Astrue*, Civil No. JKS 08-3140, 2009 WL 5030706, at *4 (D. Md. Dec. 15, 2009). As the ALJ notes, a GAF score is just a snapshot of functioning at a particular time, and he assigned Plaintiff's GAF score only "partial weight" in light of the "total lack of any ongoing mental health treatment, and absence of serious symptoms" over the ten year period at issue in the case. Tr. 26. I thus find no error in the ALJ's evaluation of the GAF score, or any other component of the RFC assessment.

As to the alleged step five errors, Plaintiff contends that as a result of a faulty hypothetical, the VE testimony did not constitute substantial evidence upon which the ALJ could base a conclusion. ECF 15-1 at 28-29. Plaintiff contends that the ALJ improperly adopted the first and second hypotheticals posed, instead of later hypotheticals posed by the ALJ and/or Plaintiff's counsel. *Id.* The ALJ is afforded "great latitude in posing hypothetical questions," *Koonce v. Apfel*, 166 F.3d 1209, 1999 WL 7864, at *5 (4th Cir. 1999) (unpublished table decision), and need only pose those that are based on substantial evidence and accurately reflect a claimant's limitations, *see Copeland v. Bowen*, 861 F.2d 536, 540-41 (9th Cir. 1988). The ALJ's first and second hypothetical questions to the VEs, which accurately incorporated the RFC assessment, were permissible without including any additional limitations that the ALJ did not deem valid. Essentially, this argument reiterates Plaintiff's contentions regarding the adequacy of the RFC. Because the ALJ's RFC assessment was adequate for the reasons discussed herein, the hypotheticals setting forth that RFC assessment were equally valid.

The Plaintiff also contends that the testimony provided by the two different VEs at the two hearings in his case contained significant discrepancies warranting remand, because the ALJ did not indicate which VE's testimony he credited. ECF 15-1 at 29-31. First, I note that the three jobs identified by the ALJ precisely match those identified by the VE at the 2017 (later) hearing. Tr. 74-76. The VE at the 2016 hearing identified two of the same positions, Tr. 138-39, and Plaintiff correctly notes that the two VEs gave discrepant testimony about the number of positions existing in the national economy. The first VE testified that there were 80,000 assembler jobs in the national economy and 40,000 table worker/inspector jobs, though those totals would be reduced by 50% to accommodate environmental limitations. Tr. 138-19. The second VE testified that there were approximately 125,000 table worker/inspector jobs and 150,000 assembler jobs, and did not impose any reduction for the environmental limitations. Tr. 74-75. Ultimately, however, a claimant is not disabled if he is able to engage in "work which exists in significant numbers either in the region where [the claimant] lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). Regardless of which VE's testimony is credited, the identified positions have far more than sufficient jobs to constitute "work which exists in significant numbers." *See Lawler v. Astrue*, Civil Action No. BPG-09-1614, 2011 WL 1485280, at *5 (D. Md. Apr. 19, 2011) (finding that where only 75-100 jobs existed in the region where

plaintiff lived did "not undermine the ALJ's conclusion that plaintiff [was] capable of performing work that exists in significant numbers in the national economy.") (citing *Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (declining to determine that 110 regional jobs would be an insignificant number)). Accordingly, any error pertaining to the discrepant numbers provided by the two VEs was harmless.

Finally, Plaintiff argues that the VEs' testimony was not consistent with the DOT. Specifically, Plaintiff argues that one of the identified positions, table worker, would require "inspecting parts on a moving conveyor belt," and that the table worker and assembler positions "would likely require more than occasional exposure to the environmental conditions noted in the hypothetical or RFC." ECF 15-1 at 31. Further, Plaintiff contends, the third position, addresser, "may also require exposure to the environmental conditions noted, as well as more than occasional interaction with the public or coworkers." *Id.* at 31-32. Plaintiff provides no citations, to the DOT or otherwise, to support his contentions about the job requirements for the positions identified by the VE. In contrast, one VE expressly testified that all three positions did not require interaction with a moving conveyor belt, Tr. 76, and two separate VEs testified that the environmental conditions would not eliminate the identified jobs. Tr. 75, 139. The addresser position was specifically identified in response to a hypothetical imposing limitations on interaction with the public and co-workers. Tr. 75. Plaintiff's rank speculation to the contrary is unavailing. Because a VE has, "through training and experience in vocational counseling or placement, an up-to-date knowledge of job requirements, occupational characteristics and working conditions, and a familiarity with the personal attributes and skills necessary to function in various jobs," *Wilson v. Califano,* 617 F.2d 1050, 1053 (4th Cir. 1980), an ALJ is permitted to rely upon a VE's testimony as substantial evidence to support a conclusion regarding vocational issues. In light of the express testimony provided by the VEs in this case, which has not been shown to be flawed, the ALJ provided substantial evidence in support of the conclusions.

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment, ECF 15, is DENIED, and Defendant's Motion for Summary Judgment, ECF 18, is GRANTED. The SSA's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge